**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN CHEW,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>GRAPHITE BIO, INC., PERRY KARSEN, ABE BASSAN, JEREL DAVIS, KIMBERLEE C. DRAPKIN, KRISTEN M. HEGE, JOE JIMENEZ, MATTHEW PORTEUS, CARLO RIZZUTO, SMITAL SHAH and JO VINEY,<br><br>　　　　　　　Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

　　　　Plaintiff, Glen Chew ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

　　　　1.　　Plaintiff brings this stockholder action against Graphite Bio, Inc. ("Graphite" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"

- 1 -
COMPLAINT

collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge with Lenz Therapeutics, Inc. ("LENZ"), through merger vehicle Generate Merger Sub, Inc., a wholly owned subsidiary of Graphite ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed merger transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an November 15, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of LENZ common stock will be converted into the right to receive 1.4135 shares of newly issued Standard Graphite common stock. Post-close, current Graphite stockholders are expected to own only approximately 30.7% of the Company.

3. Thereafter, on December 6, 2023, the Company filed a Form S4 attaching the Registration Statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into an agreement which will provide no consideration to any Company stockholder whatsoever, and will significantly dilute the shares held by Plaintiff and other Company stockholders.

5. The Registration Statement is materially deficient, depriving Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning,

among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Graphite and LENZ, provided by Graphite management to the Board and the Board's financial advisor Leerink Partners LLC ("Leerink"); (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Leerink, if any, provided to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a citizen of California and, at all times relevant hereto, has been a Graphite stockholder.

8. Defendant Graphite, is a clinical-stage gene editing company, engaged in developing therapies for serious and life-threatening diseases in the United States. The Company is incorporated in Delaware and has its principal place of business at 201 Haskins Way, Suite 210, South San Francisco, CA 94080. Shares of Graphite common stock are traded on the NASDAQ Stock Exchange under the symbol "GRPH".

9. Defendant Perry Karson ("Karson") has been a Director of the Company at all relevant times. In addition, Defendant Karson serves as the Chairman of the Company Board.

10. Defendant Abe Bassan ("Bassan") has been a director of the Company at all relevant times.

11. Defendant Jerel Davis ("Davis") has been a director of the Company at all relevant times.

12. Defendant Kimberlee C. Drapkin ("Drapkin") has been a director of the Company at all relevant times. In addition, Defendant Drapkin serves as the President and Chief Executive Officer ("CEO") of Graphite.

13. Defendant Kristen M. Hege ("Hege") has been a director of the Company at all relevant times.

14. Defendant Joe Jimenez ("Jimenez") has been a director of the Company at all relevant times.

15. Defendant Matthew Porteus ("Porteus") has been a director of the Company at all relevant times.

16. Defendant Carlo Rizzuto ("Rizzuto") has been a director of the Company at all relevant times.

17. Defendant Smital Shah ("Shah") has been a director of the Company at all relevant times.

18. Defendant Jo Viney ("Viney") has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 9 - 18 are collectively referred to as the "Individual Defendants."

20. Non-Party LENZ operates as an organization engaged in late-stage clinical development of pharmaceuticals for the eyes. LENZ is private company incorporated in Delaware and has its principal place of business at 445 Marine View Ave., Suite 320, Del Mar, CA 92014.

21. Non-Party Merger Sub is a wholly owned subsidiary of the Company created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25. Graphite, is a clinical-stage gene editing company, engages in developing therapies for serious and life-threatening diseases in the United States.

26. The Company offers GPH102 for the treatment of beta-thalassemia; GPH201 for the treatment of X-linked severe combined immunodeficiency syndrome; and GPH301, a product candidate for the treatment of Gaucher disease, a genetic disorder that results in a deficiency in the glucocerebrosidase enzyme.

27. The Individual Defendants have caused Graphite to enter into the Proposed Transaction without providing requisite information to Graphite stockholders such as Plaintiff.

***The Flawed Sales Process***

28. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29. Notably, the Registration Statement fails to disclose adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with no consideration given.

30. Moreover, the Registration Statement is silent as to the specific nature of the confidentiality agreement entered into between the Company and LENZ, the specific ways, if any, this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Registration Statement, if so, in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

31. Furthermore, The Registration Statement fails to adequately disclose the consideration paid to, or owed to, the financial advisor engaged by the Company during the sales process for services rendered in relation to the sales process and Proposed Transaction.

32. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

33. On November 15, 2023, Graphite and LENZ issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **SAN DIEGO & SOUTH SAN FRANCISCO, Calif.--(BUSINESSWIRE)--** LENZ Therapeutics, a late-stage biopharmaceutical company focused on developing and commercializing innovative therapies to improve vision, and Graphite Bio, Inc. (NASDAQ: GRPH) today announced that they have entered into a definitive merger agreement to combine the companies in an all-stock transaction. The lead programs of the combined company will address presbyopia, the inevitable loss of near vision that impacts the daily lives of nearly all people over the age of 45. The combined company is expected to trade on Nasdaq under the ticker symbol "LENZ."
>
> This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20231115881807/en/
>
> In connection with the merger, Graphite Bio has entered into a subscription agreement for a PIPE financing that is expected to close concurrently with the completion of the merger of $53.5 million, with a syndicate of healthcare investors led by LENZ's existing investors and including participation from new investors. The merger is subject to stockholder approval of both companies, the effectiveness of a registration statement to be filed with the U.S. Securities and Exchange Commission to register the securities to be issued in connection with the merger, and the satisfaction of customary closing conditions.
>
> With the cash expected from both companies at closing and the proceeds of the concurrent PIPE financing, the combined company is expected to have approximately $225 million of cash or cash equivalents. Graphite Bio is expected to contribute $115 million to the combined entity and expects to pay a dividend to Graphite Bio shareholders of approximately $60 million at the close of the transaction. Upon close, key healthcare investors in the combined company will include Versant Ventures, RA Capital Management, Alpha Wave Global, Point72, Samsara BioCapital, Sectoral Asset Management, RTW Investments and others. It is expected that the net proceeds from the merger and concurrent financing will allow the combined company to continue to build infrastructure and successfully commercialize LENZ's lead product candidate, subject to successful completion of the ongoing Phase 3 trials, New Drug Application (NDA) submission and subsequent FDA approval.
>
> "I am pleased to announce our merger with Graphite Bio, allowing us to create a publicly traded company focused on the advancement of LENZ's lead programs, LNZ100 and LNZ101 for the treatment of presbyopia. This pivotal

change comes at an important time for the company as we gear up for the readout of the Phase 3 CLARITY trials in the second quarter of 2024," said Eef Schimmelpennink, President and CEO of LENZ Therapeutics. "We believe that a once-daily pharmacological eye drop that can effectively and safely improve near vision throughout the full workday, without the need for reading glasses, will be a highly attractive commercial product with an estimated U.S. market opportunity in excess of $3 billion. We have assembled an executive team with extensive clinical, commercial and operational experience to commercialize such a product and become the category leader."

"Graphite Bio ran a thorough and strategic process and we believe that this transaction represents the company's commitment to delivering value to the Graphite stockholders," said Kim Drapkin, CEO of Graphite Bio. "LENZ Therapeutics is strongly positioned with Phase 3 lead program, addressing a very large target market with near-term, high potential, value-inflecting milestones and a well-credentialed management team to lead the combined company."

**About LENZ Therapeutics' Product Candidates**

LENZ Therapeutics' initial focus is the treatment of presbyopia. In the United States, the estimated population who suffer from this condition, known as presbyopes, is 128 million, almost four times the number of individuals suffering from dry eye disease and three times the number of individuals suffering from childhood myopia, macular degeneration, diabetic retinopathy and glaucoma combined. LENZ believes that a once-daily pharmacological eye drop that can effectively and safely improve near vision throughout the full workday, without the need for reading glasses, will be a highly attractive commercial product with an estimated U.S. market opportunity in excess of $3 billion.

LENZ's product candidates, LNZ100 and LNZ101, are preservative-free, single-use, once-daily eye drops containing aceclidine and aceclidine plus brimonidine, respectively. These product candidates are differentiated based on rapid onset, degree and duration of near vision improvement, as well as their ability to be used across the full age range of presbyopes, from their mid-40s well into their mid-70s, as well as the broadest refractive range while avoiding blurry distance vision.

Aceclidine is a miotic, a small molecule that causes pupil contraction, creating a pinhole effect that improves near vision. Unlike other miotics, such as pilocarpine and carbachol, aceclidine's mechanism of action (MOA) is pupil-selective, meaning it can reduce the pupil size below the desired 2 millimeters without overstimulating the ciliary muscles that can cause a myopic shift that can impair distance vision.

Aceclidine's MOA was demonstrated in the Phase 2 INSIGHT trial (NCT05294328), where both LZN100 and LNZ101 achieved their primary

endpoint of three-lines or greater near vision improvement without losing one or more lines in distance vision, with a responder rate of 71% (p<0.0001) and 56% (p<0.0001), respectively, compared to 6% for vehicle. Responders were able to read small text up-close without any visual aid, with both product candidates and demonstrated rapid onset with 73% (p<0.0001) and 62% (p<0.0001) having three-lines or greater improvement in near visual acuity within 30 minutes for LNZ100 and LNZ101, respectively, compared to 8% for vehicle, and sustained the statistically significant three-lines or greater improvement in near visual acuity over an extended duration of 10 hours post-treatment, the last measured timepoint. Both LNZ100 and LNZ101 were well-tolerated, with no serious drug-related adverse events. Additionally, their active ingredients have favorable tolerability profiles that have been well-established empirically as both aceclidine and brimonidine have been used as a treatment for glaucoma.

LENZ is currently conducting three Phase 3 multi-center, double-masked, randomized, active and vehicle-controlled, U.S.-based efficacy and safety trials for LNZ100 and LNZ101. To date, all sites are activated and the two six-week efficacy trials, CLARITY-1 and CLARITY-2, are fully enrolled and over 95% enrolled, respectively and the six-month safety trial, CLARITY-3, is fully enrolled. The CLARITY trials are enrolling participants ranging from 45 to 75 years old, the same age range used in the INSIGHT trial, with a refractive range of -4.0 diopters (D) spherical equivalent (SE) to +1.0D SE. Similar to the INSIGHT trial, the primary efficacy endpoint in the CLARITY-1 and CLARITY-2 trials is the percentage of subjects who achieve three-lines or greater improvement in near vision, but at three hours post-treatment rather than one hour post-treatment, comparing to brimonidine and vehicle, respectively.

LENZ expects to report Phase 3 topline results from the CLARITY trials in the second quarter of 2024 with a potential submission of an NDA for at least one product candidate in mid-2024. LENZ's objective is to commercialize the approved product that will most effectively meet the needs of the widest range of presbyopes and best create loyalty and value based on an "all eyes, all day" brand mission.

**About the Proposed Merger**

Pre-merger Graphite Bio stockholders are expected to own approximately 35% of the combined company and pre-merger LENZ Therapeutics stockholders are expected to own approximately 65% of the combined company upon the closing of the merger, prior to the additional PIPE financing transaction. The percentage of the combined company that each company's former stockholders are expected to own may be adjusted based on Graphite Bio's net cash at closing.

The transaction has been unanimously approved by the Board of Directors of both companies and is expected to close in the first quarter of 2024, subject to customary closing conditions, including the approvals by the stockholders of each company.

*Potential Conflicts of Interest*

34. The breakdown of the benefits of the deal indicate that Graphite insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Graphite.

35. The Registration Statement fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

36. For example, the Registration Statement fails to provide adequate information regarding Defendant Drapkin and her specific impact on the sales process. Notably, Defendant Drapkin and one other current member of the Graphite board of directors will serve as members of the combined company board of directors, post-merger.

37. Thus, while the Proposed Transaction is not in the best interests of Graphite, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Registration Statement*

38. On December 6, 2023, the Graphite Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information

and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

    a. Adequate reasoning as to why the Board would agree to a deal in which stockholders' interests would be diluted, with no consideration given;

    b. Adequate disclosure as to the specific effects Defendant Drapkin had on the sales process leading to the Proposed Transaction;

    c. Whether the confidentiality agreements entered into by the Company with LENZ differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties, and if so the specific manner in which they differed;

    d. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including LENZ, would fall away; and

    e. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Graphite Financial Projections*

40. The Registration Statement fails to provide material information concerning financial projections for Graphite provided by Graphite management to the Board and Leerink and relied upon by Leerink in its fairness opinion. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

41. Notably the Registration Statement reveals that as part of its analyses, Leerink reviewed, "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company prepared by management of Parent, as furnished to, and approved for use by, us for purposes of our analysis (the "Company Forecast") (collectively, the "Internal Data")."

42. The Registration Statement should have, but fails to provide, certain information in the projections that Graphite management provided to the Board and Leerink. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

43. With regards to *Graphite Liquidation Analysis*, the Registration Statement fails to disclose material line items, including the following:

    a. The estimated net balance sheet liquidation value of Graphite, and the underlying inputs, metrics, and assumptions used to determine the same specifically: Total assets,total liabilities;

      b.  Graphite's estimated proceeds from assumed asset sales during the wind-down period;

      c.  Estimated wind-down costs; and

      d.  The estimated interest income during the wind-down period.

44. The Registration Statement also fails to provide a reconciliation of all Non-GAAP metrics to GAAP.

45. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data for Graphite being presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Leerink's fairness opinion, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning LENZ' Financial Projections*

47. The Registration Statement fails to provide material information concerning financial projections for LENZ provided by LENZ and Graphite management to the Board and Leerink and relied upon by Leerink in its fairness opinion. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

48. The Registration Statement should have, but fails to provide, certain information in the projections that LENZ and Graphite management provided to the Board and Leerink. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures

by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

49. With regards to *Graphite Management LENZ Non Risk-Adjusted Projections*, the Registration Statement fails to disclose material line items, including the following:

    a. The underlying inputs, metrics, and assumptions used to determine the Total Net Revenue of LENZ for the years of 2025 through 2036; and

    b. The underlying inputs, metrics, and assumptions used to determine the Operating Income of LENZ for the years of 2025 through 2036.

50. With regards to *Graphite Management LENZ Risk-Adjusted Projections*, the Registration Statement fails to disclose material line items, including the following:

    a. The specific inputs, metrics, and assumptions upon which upon which the projections were risk-adjusted, including specifically:

        i. The specific 2025-2035 research and development costs;

        ii. The specific 2025-2036 sales and marketing costs; and

        iii. The specific 2025-2036 general and administrative costs;

    b. The underlying inputs, metrics, and assumptions used to determine the Total Net Revenue of LENZ for the years of 2025 through 2036;

    c. The underlying inputs, metrics, and assumptions used to determine the Operating Income of LENZ for the years of 2025 through 2036; and

    d. The underlying inputs, metrics, and assumptions used to determine the Unlevered Free Cash Flow for the years 2025 through 2036 specifically: operating income, less taxes, and less change in net working capital.

51. The Registration Statement also fails to provide a reconciliation of all Non-GAAP metrics to GAAP.

52. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

53. Without accurate projection data for LENZ being presented in the Registration Statement, Plaintiff is unable to properly evaluate the LENZ' value, the accuracy of the Leerink fairness opinion, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Leerink*

54. In the Registration Statement, Leerink describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

55. With regards to Leerink's *Discounted Cash Flow Analysis for LENZ*, the Registration Statement fails to disclose material line items, including the following:

   a. The underlying inputs, metrics, and assumptions used to determine the utilized perpetuity decline of 50%;

      b. The underlying inputs, metrics, and assumptions used to determine the utilized discount rate ranging from 11% to 13%;

      c. The weighted average cost of capital calculation for LENZ derived from the following:

          i. The specific levered and unlevered betas for certain companies deemed comparable to LENZ by Leerink; and

          ii. The specific equity market risk premium and yields for U.S. treasury bonds.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Graphite stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

65. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

66. Plaintiff repeats all previous allegations as if set forth in full herein.

67. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

- 18 -
COMPLAINT

69. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Graphite's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

70. The Individual Defendants acted as controlling persons of Graphite within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Graphite to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Graphite and all of its employees. As alleged above, Graphite is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 1, 2024

**BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*